IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

    vs.          No. 18-PO-4491 KG/SMV

MELVIN JOSE MONTES-GUZMAN,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Melvin Montes-Guzman's appeal from the judgment and conviction entered by United States Magistrate Judge Stephan M. Vidmar on January 28, 2019. (Doc. 25). Defendant was found guilty of illegal entry without inspection in violation of 8 U.S.C. § 1325(a). (*Id.*) He appeals his conviction on the basis that the Magistrate Judge incorrectly applied the law regarding the definition of "entry" and the doctrine of official restraint, that he never intended to evade inspection, and that under a correct application of the law the evidence does not support a finding beyond a reasonable doubt that he "entered" the United States.

Having reviewed the briefing, the record, and the applicable law, the judgment finding Defendant guilty of entry without inspection in violation of 8 U.S.C. § 1325(a) is affirmed.[1] As further explained herein, the Court is not persuaded that the doctrine of official restraint applies in this context. Even if official restraint does apply, the Court concludes that continuous surveillance by law enforcement during the crossing of an international border does not

---

[1] The Magistrate Judge did not address a theory of attempted entry without inspection and the Defendant was not convicted of attempted entry. While Defendant addresses attempted entry in his opening brief, that issue is not properly before this Court.

constitute constructive official restraint. Moreover, continuous surveillance is inapplicable to this case because the Defendant was not observed crossing the border between Mexico and the United States. Finally, a conviction under 8 U.S.C. § 1325(a)(1) does not require evidence of intent to evade inspection.

I. Background

Defendant Melvin Montes-Guzman is a citizen of Nicaragua. (Doc. 28) at 18 (Transcript of Proceedings Bench Trial and Sentencing Before Honorable Stephan M. Vidmar, United States Magistrate Judge, held January 28, 2019, in *United States v. Montes-Guzman*, No. 18-po-4491). Defendant was arrested on December 17, 2018, after crossing the international boundary line between the United States and Mexico near "Monument 1." Defendant stipulates that he is an alien, meaning not a citizen or national of the United States, and that he crossed at a point other than a place designated by immigration authorities as an official port of entry. (*Id.*) at 9.

Around 11:00 a.m. on that day, Border Patrol Agent Michael Aragon was engaged in his official duties when he parked his marked vehicle on a bluff overlooking the international boundary between Mexico and the United States. (*Id.*) at 13. Agent Aragon observed as a white sedan parked in the northwestern corner of a parking lot on the Mexico side of the border, very near the border, but he did not see anyone exit the vehicle. (*Id.*) He then turned his attention elsewhere. (*Id.*) at 13-14. When Agent Aragon turned his attention back to the parked sedan, he observed an individual walking on the northside of the border in New Mexico, near where the white sedan had parked. (*Id.*) at 14, 20. Agent Aragon "saw a person approximately 15 to 20 feet to the north" of a marker indicating the boundary between the United States and Mexico. (*Id.*) at 14. However, he did not see anyone cross the boundary. (*Id.*) at 24.

The location at which Agent Aragon observed the Defendant in the United States is approximately two to three miles from the Paseo del Norte port of entry in El Paso, Texas, and approximately ten miles from the Santa Teresa Port of Entry in Santa Teresa, New Mexico. (*Id.*) at 21-22.

Agent Aragon saw the individual walk in an eastern direction along a levy road, Brickland Road. (*Id.*) at 14. Agent Aragon observed the individual look in his direction, appear to see him, and continue to walk in an easterly direction rather than toward Agent Aragon's vehicle. (*Id.*) at 14-16, 32. Agent Aragon then drove toward where he could intercept this individual. (*Id.*) at 17. Agent Aragon drove two to three minutes to Brickland Road and turned south, where he observed the same individual walking northbound. (*Id.*) at 17-18. He could not maintain sight of the individual the entire time. (*Id.*) at 18.

Upon approaching the individual, Agent Aragon greeted the person in English and then in Spanish, identifying himself as a Border Patrol Agent. (*Id.*) at 17-18. The individual, later identified as the Defendant, told Agent Aragon that he was from Nicaragua and was going to El Paso. (*Id.*) at 18, 20. The Defendant appeared well dressed and well kept, not disheveled or dirty. (*Id.*) at 20. The Defendant did not have any legal immigration documents, so Agent Aragon arrested him for illegal entry into the United States. (*Id.*) Agent Aragon then requested assistance via radio to transport the Defendant. (*Id.*) at 21.

At his trial, Defendant testified that he requested asylum upon encountering Agent Aragon. (*Id.*) at 48-49, 52-53. Furthermore, Defendant testified that he crossed the border at the location because of fear, that he saw the Border Patrol Agent immediately and went to meet him, and that his intent in entering the United States was to request asylum. (*Id.*) at 49. Neither

Agent Aragon nor Agent Albert Dominguez, who processed the Defendant at the Santa Teresa Border Patrol station, remember the Defendant requesting asylum. (*Id.*) at 28, 38-39.

The United States charged Defendant with improper entry without inspection, in violation of 8 U.S.C. § 1325(a), for "enter[ing] and attempt[ing] to enter the United States at a time and place other than as designated by Immigration Officers." (Doc. 1) at 1. At the close of the United States' case-in-chief, Defendant moved for a directed verdict, which the Magistrate Judge denied. (Doc. 28) at 40.

Defendant agreed that because the agent had kept him under near constant surveillance while he crossed the border, he was under constructive official restraint the entire time and thus had not "entered" the United States. (Doc. 28) at 59-62. Defendant further argued, even if official restraint did not apply, that he lacked the intent to evade inspection because he intended to apply for asylum. (*Id.*) at 62-63.

The United States disputed the application of the official restraint doctrine and argued that the evidence proved beyond a reasonable doubt that Defendant met the elements necessary for a conviction under 8 U.S.C. § 1325(a): (1) he is not a citizen of the United States; (2) he entered the United States; and (3) at a location other than a designated port of entry. (*Id.*) at 57-58. While the United States argued that the official restraint doctrine does not apply in this District to define "entry" in criminal immigration cases, it argued in the alternative that this Defendant was not continually surveilled and was not observed until after he crossed the border and perfected the illegal entry. (*Id.*) at 58. The Magistrate Judge found Defendant guilty of the offence and sentenced to time served. (*Id.*) at 75.

Defendant timely filed a notice of appeal on February 12, 2019 (Doc. 26), and timely filed his opening brief on March 12, 2019 (Doc. 32). Defendant contends that "entry" within the

meaning of § 1325(a) has three elements: 1) physical presence in the United States; 2) inspection and admission by an immigration official or actual and intentional evasion of inspection; and 3) freedom from official restraint.  Defendant argues that under a correct application of the official restraint doctrine, he is not guilty of violating 8 U.S.C. § 1325(a).  Defendant asserts in the alternative that he intended to declare for asylum immediately and never intended to evade inspection, and therefore the second element of "entry," is not satisfied.  As a result, he is not guilty.

II.     Standard of Review

The Court has jurisdiction in this matter pursuant to 18 U.S.C. § 3402: "In all cases of conviction by a United States magistrate judge an appeal of right shall lie from the judgment of the magistrate judge to a judge of the district court of the district in which the offense was committed."  However, "[t]he defendant is not entitled to a trial de novo by a district judge.  The scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge."  Fed. R. Crim. P. 58(g)(2)(D).  The Court reviews "the legal conclusions de novo and factual findings for clear error."  *United States v. Morrison*, 415 F.3d 1180, 1184 (10th Cir. 2005).  The Court must review the record for sufficiency of the evidence to determine "whether a reasonable jury could find the defendant guilty beyond a reasonable doubt, given the direct and circumstantial evidence, along with reasonable inferences therefrom, taken in a light most favorable to the government."  *United States v. DeChristopher*, 695 F.3d 1082, 1091 (10th Cir. 2012).

III.    Discussion

The parties present two distinct and individually dispositive questions on appeal: (1) whether freedom from official restraint is a required element of "entry" in this case; and (2)

whether a defendant's intent to declare for asylum negates any element of "entry." The Court answers both questions in the negative and affirms the Magistrate Judge's judgment finding Defendant guilty of entry without inspection in violation of 8 U.S.C. § 1325(a).

As an initial matter, the Court adopts the United States' definition of "entry" for purposes of 8 U.S.C. § 1325(a)(1), to wit: (1) an alien (2) physically entered the United States (3) at a location other than a port of entry designated by Immigration Officials. 8 U.S.C. § 1325(a)(1).

A. *The Official Restraint Doctrine Does Not Apply to this Case*

The parties cite Judge Brack's January 25, 2019, Memorandum Opinion and Order in *United States v. Gaspar-Miguel*, 18-po-2441 RB/GBW, ECF No. 48, in which he clearly explained the origins of the official restraint doctrine. Memorandum Opinion and Order at 8-18. Most notably, Judge Brack explained the official restraint doctrine stems from civil immigration cases in which courts determined the contours of due process protections offered migrants. *Ex Parte Chow Chok*, 161 F. 627 (N.D.N.Y. 1908), *aff'd* 163 F. 1021 (2d Cir. 1908). This Court adopts Judge Brack's explanation of that history.

      i. *The Official Restraint Doctrine Does Not Apply*

Nonetheless, this Court concludes that the official restraint doctrine does not apply to criminal immigration cases arising outside a port of entry.[2]

The Tenth Circuit has addressed, but neither adopted nor rejected the official restraint doctrine. *See United States v. Franco-Lopez*, 687 F.3d 1222, 1227 (10th Cir. 2012). In *Franco-Lopez*, the Tenth Circuit upheld the defendant's conviction for transporting aliens in violation of

---

[2] As further discussed *infra*, in Section B, Defendant's proposed definition of "entry" violates the rule against surplusage and inappropriately collapses § 1325(a)(1) with § 1325(a)(2), despite the fact that the statute specifically enumerates three distinct ways to commit the offense illegal entry.

8 U.S.C. § 1324.  687 F.3d at 1228.  On appeal, the defendant argued that his conviction should be overturned because the transported aliens had been under official restraint and thus never "entered" the United States.  *Id.* at 1227.  In affirming the lower court, the Tenth Circuit explained that the district court "noted that a 'sheer lack of evidence [did] leave a reasonable doubt as to whether the group actually "entered" the United States such that they were free from official restraint in the form of surveillance.'"  *Id.* at 1225 (quoting *United States v. Franco-Lopez*, 709 F. Supp. 2d 1152, 1165 (D.N.M. 2010)).

The Tenth Circuit did not need to address the issue of official restraint because proof that an alien had "entered" the United States was not a required element of transporting aliens in violation of 8 U.S.C. § 1324.  *Id.* at 1227.  Though the Tenth Circuit did not reject the doctrine of official restraint in *Franco-Lopez*, this Court finds it likely that the Tenth Circuit would follow the Fifth Circuit and decline to adopt the doctrine.  Until such time as the Tenth Circuit adopts the doctrine of official restraint as an element of "entry," the Court concludes that "entry" does not include freedom from official restraint as an element.

Notably, the Tenth Circuit has not had occasion to promulgate jury instructions for 8 U.S.C. § 1325(a), but has done so for 8 U.S.C. § 1326(a).  Section 1326(a) makes it a crime for an alien to enter or attempt to enter the United States after having been previously deported, excluded, or removed from the United States and having not received legal authority to reapply for admission to the United States.  8 U.S.C. § 1326(a); Pattern Crim. Jury Instr. 10th Cir. 2.05.  Sections 1325(a) and 1326(a) are substantially similar in that both offenses require at least in part

evidence of an entry. One difference is that § 1326(a) criminalizes repeat unlawful entries and provides felony-level penalties.[3]

Nothing in this instruction or the comment thereto suggests that the Tenth Circuit has adopted or would adopt the official restraint doctrine as an element of "entry" in criminal immigration cases arising outside a port of entry. For this reason, too, the Court concludes that freedom from official restraint is not an element of "entry" for purposes of 8 U.S.C. § 1325(a)(1).

      ii.    *Continuous Surveillance Does Not Constitute Official Restraint.*

Even if the official restraint doctrine applied, this Court agrees with Judge Brack that continuous surveillance does not constitute official restraint. The notion of surveillance as restraint stems, ultimately, from a 1973 Board of Immigration Appeals decision in which the board noted that "restraint *may* take the form of surveillance, unbeknownst to the alien." *In re Pierre*, 14 I. &. N. Dec. 467, 469 (Oct. 5, 1973) (emphasis added).

Since 1973, multiple circuits have adopted surveillance as constructive restraint in myriad civil immigration contexts. (Doc. 23-1) at 20 (collecting cases); *see, e.g.*, *Zhang v. Slattery*, 55 F.3d 732, 755 (2d Cir. 1995) *superseded by statute on other grounds as stated in* 618 F.3d 172,

---

[3] *Compare* 8 U.S.C. § 1326(a) (criminalizing "any alien who (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act") *with* 8 U.S.C. § 1325(a) (criminalizing "[a]ny alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers, or (2) eludes examination or inspection by immigration officers, or (3) attempts to enter or obtains entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact . . .").

202 (2d Cir. 2010) ("once the ship was spotted . . . the passengers aboard it were already under restraint . . . Continuous surveillance by immigration authorities can be sufficient to place an alien under official restraint"); *Farquharson v. U.S. Attorney Gen.*, 246 F.3d 1317, 1321-22 (11th Cir. 2001) (evidence was "insufficient to indicate that [defendant] was under surveillance, and therefore under constructive restraint, when he landed his plane in Florida[,] . . . [his] landing was witnessed only by a private individual[,] . . . [and he] was not located by officials until approximately one-half hour after he landed"); *De Leon v. Holder*, 761 F.3d 336, 339-43 (4th Cir. 2014) (applicants for cancellation of removal under the Nicaraguan Adjustment and Central American Relief Act must prove they "entered the United States 'free from official restraint,'" which "may take the form of surveillance, unbeknownst to the alien" (quoting *Pierre*, 14 I. & N. Dec. at 469)).

"[I]n interpreting a statute a court should always turn to one cardinal canon before all others . . . [C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992). If Congress wanted to add an additional element or otherwise create an affirmative defense based on continuous surveillance, it would do so. It strains credulity to suggest that, on one hand, Congress directed the Commissioner of Customs and Border Patrol to "ensure the interdiction of persons and goods illegally entering . . . the United States," 6 U.S.C. § 211(c)(2), yet simultaneously allowed actions within Border Patrol's lawful authority to unilaterally negate criminal conduct.

Furthermore, courts must assume that the legislature did not intend an absurd result. *Green v. Bock Laundry Machine Co.*, 490 U.S. 504 (1989). As Judge Brack astutely observed in *Gaspar-Miguel*, it defies logic to assert that observation by law enforcement during the

9

commission of what would otherwise be a crime somehow negates a defendant's actus reus and absolves him of criminal liability. (Doc. 23-1) at 21.

Reading 8 U.S.C. § 1325(a) and applying the official restraint doctrine, the Court concludes that continuous surveillance does not constitute constructive restraint sufficient to negate "entry."

        iii.    *The Defendant Was Not Continuously Surveilled*

Were the Court to agree with Defendant that the official restraint doctrine applies to this case and that continuous surveillance constitutes constructive restraint, the Court would nonetheless find this defendant was not continuously surveilled. Agent Aragon testified that he did not see the Defendant cross the boundary between the United States and Mexico, and indeed did not see the Defendant until the Defendant was north—on the United States side—of the boundary.[4] (Doc. 28) at 24. Defendant was not continuously surveilled and so he was free from official restraint and completed his entry into the United States.

"An alien who is not discovered until some time after exercising his free will within the United States . . . has entered free from official restraint." *United States v. Gonzalez-Torres*, 309 F.3d 594, 598 (9th Cir. 2002) (citing *United States v. Martin-Plascencia*, 532 F.2d 1316, 1317 (9th Cir. 1976)). In *Martin-Plascencia*, the Ninth Circuit found that an alien who crawled through two fences and ran fifty yards into the United States, undetected, before he was apprehended, was not under any type of official restraint. 532 F.2d at 1317-18. The Defendant here was not observed until he was several yards north of the international boundary line.

---

[4] In Defendant's opening brief, he asserts that "Agent Aragon testified that he saw [Defendant] cross the border." (Doc. 32) at 18. In fact, when Agent Aragon was asked whether Defendant crossed at Monument 1, he answered: "It's close. I never saw him cross the boundary. I just saw him north of it. So I don't know if he used that particular spot to cross." (Doc. 28) at 24.

Defendant entered the United States free from surveillance. Therefore, he was not under any type of official restraint when he physically entered the country.

Were this Court to adopt the expansive view of official restraint advanced by Defendant, which it does not, the Court would still conclude in this case that Defendant was free from surveillance and official restraint.

B. *Intent to Evade Inspection is not an Element of the Offense*

Defendant further argues that he is not guilty of entering without inspection because there is no evidence that he actually and intentionally evaded inspection. (Doc. 32) at 19. According to Defendant, "entry" requires (1) crossing into the territorial limits of the United States, that is, physical presence; (2) inspection and admission by an immigration officer or actual and intentional evasion of inspection; and (3) freedom from official restraint. (*Id.*) The Court rejects this argument.

Section 1325(a) criminalizes:

> Any alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers, or (2) eludes examination or inspection by immigration officers, or (3) attempts to enter or obtains entry to the United States by a willfully false or misleading representations or the willful concealment of a material fact[.]

8 U.S.C. § 1325(a) (emphasis added). Defendant's definition of "entry" impermissibly collapses § 1325(a)(1) with § 1325(a)(2). Defendant's definition would render § 1325(a)(2) entirely superfluous, as "actual and intentional evasion of inspection" would already be an element of "enter[ing] or attempt[ing] to enter the United States" for purposes of § 1325(a)(1).

Section 1325(a) provides three ways in which an alien may commit illegal entry or attempted entry: he or she may enter the United States other than at a port of entry during designated hours; he or she may elude or evade, or attempt to do so, inspection by immigration

11

officers at a port of entry; or he or she may present false documents or information to immigration officers at a port of entry. The three options are mutually exclusive. This Court declines to read the statute in a manner that renders one of three disjunctive subsections redundant.

As previously noted, the Court concludes that 8 U.S.C. § 1325(a)(1) requires the following three elements: (1) an alien (2) physically entered the United States (3) at a location other than a port of entry designated by Immigration Officials. Defendant, a citizen and national of Nicaragua, crossed the international boundary into the United States at a place other than as designated by Immigration Officials, that is, not at a port of entry. Defendant admits as much. Section 1325(a)(1) does not require more. Therefore, Defendant's asserted defense that he intended to declare for asylum does not negate his illegal act of crossing into the United States at a location other than a port of entry designated by Immigration Officials.

IV.   Conclusion

For the reasons discussed herein, the judgment of the Magistrate Judge is affirmed. While this Court concludes that the official restraint doctrine does not apply to 8 U.S.C. § 1325(a)(1), and that continuous surveillance does not constitute constructive official restraint, Defendant's conviction can also be affirmed on the basis that he was not observed until after he physically entered the United States. Furthermore, subjective intent to declare for asylum does not constitute an affirmative defense to illegal entry without inspection under 8 U.S.C. § 1325(a)(1).

There is sufficient evidence in the record to find beyond a reasonable doubt that Mr. Montes-Guzman entered the United States, and his conviction for entry without inspection in violation of 8 U.S.C. § 1325(a) is affirmed.

_____
UNITED STATES DISTRICT JUDGE